# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. L. WADE, Minor.

UNPUBLISHED
November 14, 2017

Nos. 337704, 337877
Macomb Trial Court
Family Division
LC No. 2015-000059-NA

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father each appeal as of right the trial court's order terminating their parental rights to the minor child, MLW. The trial court terminated the parental rights of both respondents pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions supporting jurisdiction exist and have not been rectified), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm to child if child is returned to parent's care). The trial court also terminated respondent-mother's parental rights under MCL 712A.19b(3)(i)[1] (rights to sibling terminated due to serious and chronic neglect and attempts to rehabilitate parent have been unsuccessful). We affirm.

Both respondents argue that the trial court erred in finding that a statutory ground for termination was established by clear and convincing evidence and that termination of their parental rights was in the child's best interests. Respondent-mother also argues that termination of her parental rights was inappropriate because petitioner failed to make reasonable efforts to accommodate her mental health issues. We reject all of these arguments.

With regard to statutory grounds for termination, the petitioner bears the burden of proving a statutory ground by clear and convincing evidence. MCL 712A.19b(3); *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). This Court reviews for

---

[1] Although the transcript of the trial court's bench decision refers to subsection (l), not (i), it is apparent that the citation to subsection (l) is an error because the supplemental petition requested termination of respondent-mother's parental rights pursuant to subsection (i), and the parties argued regarding the applicability of subsection (i) at the close of the termination hearing.

-1-

clear error a trial court's decision that a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357. A decision qualifies as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). We "give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*), which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

First addressing respondent-mother's argument with respect to this ground, she principally argues that the trial court erred in not allowing her additional time in which to complete her treatment plan. We disagree.

At the time of the termination hearing, approximately 21 months had elapsed since the trial court's entry of an initial dispositional order. In April 2015, respondent-mother pleaded no contest to the allegations in an amended petition regarding MLW. The conditions that led to MLW's adjudication included respondent-mother's untreated mental illness, lack of housing, and lack of employment. The petition alleged that in 2008, petitioner substantiated three allegations of neglect concerning respondent-mother and MLW's older sibling. During that case, respondent-mother repeatedly inflicted domestic violence on her mother, did not seek regular treatment for her mental illness, and failed to improve her parenting skills despite receiving intensive parenting assistance. Respondent-mother eventually relinquished her parental rights to MLW's sibling. When the petition in this case was filed in March 2015, respondent-mother had been diagnosed with bipolar disorder and schizophrenia, but she neither regularly attended mental health appointments nor took prescribed medications. Further, in January 2015, while respondent-mother was pregnant with MLW, an adult protective services group appointed a guardian to assist respondent-mother because she was homeless. However, respondent-mother failed to cooperate with the guardian and, as a result, lacked appropriate, stable housing for MLW. The trial court exercised jurisdiction over MLW in April 2015 on the basis of

respondent-mother's no contest plea to the petition. In May 2015, the trial court ordered respondent-mother to participate in a psychological evaluation, drug screens, parenting classes, a substance abuse assessment, and attend supervised parenting times.

Clear and convincing evidence showed that the conditions leading to MLW's adjudication in April 2015 continued to exist in February 2017 with no reasonable likelihood of being rectified within a reasonable time. Caseworker Jasmine Warren testified that respondent-mother participated in a psychological evaluation, which recommended that she complete parenting classes and mental health services. Respondent-mother also underwent a psychiatric evaluation that recommended she participate in emotional health treatment. Petitioner referred respondent-mother for mental health services six times, but respondent-mother only completed an intake meeting and first appointment. Although respondent-mother reported that she had begun mental health counseling shortly before the termination hearing, she failed to substantiate her attendance at counseling. Respondent-mother also received treatment in psychiatric hospitals on three or four occasions and had been prescribed approximately 10 psychotropic medications. According to respondent-mother, she was attending mental health treatment at the time of the termination hearing, but she failed to substantiate this treatment to her caseworker. Additionally, respondent-mother lived with her mother at the time of the termination hearing, which was an inappropriate placement because her mother had a history that placed her on petitioner's central registry. Thus, respondent-mother never obtained stable, suitable housing while MLW was in foster care. Lastly, at the time of the termination hearing, respondent-mother did not have employment, but she received approximately $900 in monthly Social Security disability benefits. Accordingly, clear and convincing evidence established that by February 2017, respondent-mother had failed to demonstrate improvement in her mental health treatment, housing, or employment.

Further, clear and convincing evidence established the unlikelihood that respondent-mother would be able to sufficiently improve her housing situation, mental health, or lack of employment within a reasonable time in light of MLW's very young age. A decision regarding a reasonable time for improvement "appropriately focuse[s] not only on how long it would take respondent to improve . . . but also on how long her . . . children could wait for this improvement." *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

Respondent-mother previously received intensive parenting assistance when her older child was made a court ward in 2008, but she failed to benefit from those services and relinquished her parental rights to that child. During the instant proceeding, respondent-mother demonstrated no improvement in her ability to maintain proper housing, a suitable income, or treat her mental health. MLW was two years old at the time of her termination. She had spent most of her life, approximately 21 months, as a temporary court ward, and she urgently needed permanency and stability. The record clearly and convincingly demonstrates the unlikelihood that respondent-mother will be able to adequately improve her parenting skills "within a reasonable time" given MLW's age. See *In re LE*, 278 Mich App 1, 28; 747 NW2d 883 (2008).

Respondent-mother urges us to reach the opposite conclusion based on *In re Boursaw*, 239 Mich App 161, 169-178; 607 NW2d 408 (1999). However, respondent-mother's reliance on *In re Boursaw* is misplaced. In that case, the trial court terminated the parental rights of a special needs respondent primarily because of the length of time the children had remained out of the

respondent's care (approximately 10 months), despite that the respondent had made substantial progress toward completing her treatment plan. *Id.* at 176. This Court concluded that termination was premature because the respondent "had made significant strides toward remedying the problems that had brought this matter to petitioner's attention." *Id.* at 176-177. In contrast, respondent-mother in this case was allowed approximately 21 months to complete her treatment plan, but made little to no progress. She completed psychological and psychiatric evaluations and attended a substance abuse evaluation, but ignored the requirement that she participate in mental health treatment in light of her longstanding mental illness. She also ignored the recommendations from the psychological and psychiatric evaluations to seek mental and emotional health treatment. Respondent-mother also attended parenting classes and most parenting times, but parented MLW poorly despite that she received many weeks of assistance from two one-on-one parenting referrals. And as previously noted, respondent-mother failed to obtain suitable housing or a sufficient income to raise MLW. Accordingly, unlike the respondent in *In re Boursaw*, respondent-mother had not made substantial progress after 21 months of participation in her treatment plan.

The trial court also properly terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(c)(*ii*). Although respondent-mother's poor parenting skills were not a condition that led to adjudication, her lack of parenting skills would have potentially caused MLW to come within the trial court's jurisdiction under MCL 712A.2(b). Respondent-mother received assistance to improve her parenting skills but failed to demonstrate any improvement.

The record indicates that respondent-mother eventually completed a parenting course. However, because she did not demonstrate an understanding of the parenting class concepts, petitioner referred her to two hands-on parenting assistance programs. The first program was ended in September 2015 after respondent-mother stopped participating. Although respondent-mother completed the second hands-on program, she failed to achieve most of its goals. Respondent-mother did not sufficiently strengthen her bond with MLW, use healthy communication skills in advocating for her and MLW's needs, or participate in individual counseling to improve her mental health. Indeed, respondent-mother's caseworker testified that respondent-mother regularly attended parenting times but failed to demonstrate proper parenting skills. Respondent-mother referred to MLW as "stupid," yelled at MLW, used profanity toward the caseworkers in MLW's presence, and consistently communicated with MLW inappropriately. Moreover, at her most recent parenting time in February 2017, respondent-mother still required repeated redirection when she yelled at the workers for approximately 12 minutes.

The record also clearly and convincingly established the unlikelihood that respondent-mother would be able to improve her parenting skills within a reasonable time given MLW's young age. Respondent-mother's poor parenting skills had existed since 2008 when she relinquished her parental rights to MLW's sibling. MLW had spent approximately 21 months as a temporary court ward, yet mother was unable to improve her parenting ability during that time. The record clearly and convincingly establishes the unlikelihood that respondent-mother will be able to demonstrably improve her parenting skills "within a reasonable time" given MLW's age. *In re LE*, 278 Mich App at 28.

Likewise, with respect to respondent-father, MCL 712a.19b(c)(*i*) and (*ii*) were clearly established. In April 2015, respondent-father admitted that he could not care for MLW because he did not have proper, stable housing. In May 2015, the trial court exercised jurisdiction over MLW and ordered respondent-father to complete a psychological evaluation, drug screens, parenting classes, a substance abuse assessment, and attend supervised parenting times.

Clear and convincing evidence showed that the conditions leading to MLW's April 2015 adjudication continued to exist in February 2017 with no reasonable likelihood of being rectified by respondent-father within a reasonable time. Pursuant to his treatment plan, respondent-father completed a psychological evaluation, which recommended that he complete parenting classes, individual therapy, a substance abuse assessment, drug screens, and attend supervised parenting times. However, respondent-father failed to finish individual therapy before he was incarcerated on December 31, 2015, on the basis of a domestic violence, third offense, charge. During respondent-father's incarceration, he participated in an emotional support group that had no specific goals. At the time of the termination hearing, respondent-father remained incarcerated. The testimony of Warren and respondent-father agreed that he never obtained stable housing suitable for MLW. Respondent-father's and Warren's testimony also agreed that respondent-father never expressed a plan to care for MLW while he was incarcerated.

The record clearly and convincingly establishes that respondent-father's lack of suitable housing existed for the approximately 21-month period between entry of the initial dispositional order and the termination hearing. The record also clearly and convincingly demonstrates the unlikelihood that respondent-father will be able to improve this condition within a reasonable time given MLW's young age. *In re Dahms*, 187 Mich App at 648. MLW spent most of her young life in foster care and needed permanency and stability. Warren testified that respondent-father lacked proper housing for MLW throughout the proceedings. And Warren and respondent-father agreed that he had no plan to provide for MLW's housing or other needs during his incarceration. The record clearly and convincingly demonstrates the unlikelihood that respondent-father will be able to provide MLW with proper housing "within a reasonable time" given MLW's age. *In re LE*, 278 Mich App at 28.

Clear and convincing evidence also established the propriety of terminating respondent-father's parental rights pursuant to MCL 712A.19b(3)(c)(*ii*). Respondent-father's inability to properly supervise MLW and his substance abuse constituted conditions that would have caused her to come within the trial court's jurisdiction under MCL 712A.2(b). Warren testified that respondent-father received recommendations to participate in parenting classes, supervised parenting times, substance abuse treatment, and drug screens to rectify his parental shortcomings. Ample evidence established that respondent-father failed to rectify these conditions after receiving "a reasonable opportunity" to rectify them, and that there was no reasonable likelihood that he would be able to rectify them within a reasonable time considering MLW's age. At the time of the termination hearing, respondent-father had been incarcerated since December 31, 2015. Warren testified that, prior to his incarceration, respondent-father participated in a substance abuse evaluation that recommended substance abuse treatment, which he did not complete. Also prior to his incarceration, respondent-father submitted only 6 of 29 scheduled drug screens, and the six screens he submitted tested positive for THC. Respondent-father did not have employment before his incarceration, never provided significant financial support for MLW, and never expressed a plan to care for MLW while he was

incarcerated. Moreover, respondent-father did not complete parenting classes, despite that petitioner referred him to classes on four occasions. Respondent-father also missed more than 40 parenting times before his incarceration, and at the parenting times he did attend, he failed to demonstrate proper parenting skills. Moreover, he and respondent-mother often yelled at one another during joint parenting times. Respondent-father also sometimes appeared for parenting times intoxicated or without nutrition for MLW that petitioner asked him to provide.

Respondent-father argues that the trial court erred in finding that any statutory ground justifying termination was satisfied because he was incarcerated. In support of this argument, respondent-father cites *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), in which our Supreme Court held that the "state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." Respondent-father also cites the statement that a parent's "mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 161. However, the record in this case illustrates that the trial court did not premise termination of respondent-father's parental rights merely on his incarceration or inability to care for MLW himself because of his incarceration. The trial court correctly considered the entirety of the relevant circumstances regarding respondent-father, which included his continued incarceration at the time of the termination hearing, but also his lack of proper housing, failure to complete therapy or parenting classes, failure to participate in substance abuse treatment or drug screens, failure to demonstrate proper parenting skills, and lack of a plan to care for MLW while imprisoned.

Having concluded that at least one ground for termination existed with respect to each respondent, we need not consider the additional grounds upon which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Next, in Docket No. 337704, respondent-mother asserts that, because the trial court and petitioner had notice of her mental health history, it owed her the duty to reasonably accommodate her illness in providing the services comprising the treatment plan. "In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App at 18. "While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Contrary to respondent-mother's contention, petitioner provided her with abundant services reasonably designed to improve her parenting skills. In light of respondent-mother's past parenting difficulties and history of mental illness, and consistent with the recommendations in respondent-mother's psychological and psychiatric evaluations, petitioner referred her to parenting classes six times, which included two referrals for one-on-one assistance during parenting times, and weekly supervised parenting times. Although respondent-mother participated in the services designed to improve her parenting skills, she failed to demonstrate a better capacity to supervise MLW. Petitioner also repeatedly referred respondent-mother for mental health treatment, which respondent-mother ignored. Further, respondent-mother failed to acquire stable housing, despite assistance from petitioner. In sum, petitioner provided respondent-mother with reasonable efforts to improve her capacity to parent in light of her history of mental illness. After approximately 21 months, respondent-mother failed to

participate in the services offered or benefit from the services. Therefore, we reject this claim of error.

Lastly, both respondents argue that the trial court erred by concluding that termination was in MLW's best interests. We disagree. "Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). In *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), this Court summarized the best-interest analysis as follows:

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citations and quotation marks omitted.]

The trial court committed no clear error in finding that termination of respondents' parental rights served MLW's best interests. Testimony reflected that a loving bond existed between respondents and MLW. But even after participating in parenting classes and many weeks of intensive parental coaching, respondent-mother inconsistently displayed affection toward MLW and did not exhibit appropriate parenting techniques at parenting times. Respondent-mother also demonstrated inconsistent and insubstantial improvement in her ability to supervise MLW. Moreover, respondent-mother failed to substantially comply with her case service plan, particularly with respect to her mental health treatment. As such, mother's mental health remained an ongoing concern. With respect to respondent-father, he likewise failed to comply with his case service plan. He also failed to participate in parenting classes and exhibited no improvement in his ability to parent MLW. Respondent-father also largely refused to participate in drug screens, and on the few occasions that he did participate, he tested positive. During the 21 months that respondents had to complete their case service plans, MLW remained in foster care and her future remained uncertain. Based on MLW's young age, she strongly needs finality, permanency, and stability. And in contrast to respondents' inconsistency, MLW's foster placement has provided MLW with a safe and stable home that has allowed MLW to thrive. Accordingly, a preponderance of the evidence supports the trial court's finding that termination of respondents' parental rights was in MLW's best interests.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron